Jonathan D. Joseph, SBN 90564
Jonathan M. Cohen, SBN 168207
Joseph and Cohen, Professional Corporation
659 12th Avenue
San Francisco, CA  94118
Telephone: (415) 817-9200
Fax: (415) 874-1997
jcohen@josephandcohen.com

*Attorneys for Plaintiffs THOMAS T. HAWKER; JOHN J. INCANDELA; DAVE KRAECHAN; EDWIN JAY LEE; and EDWARD J. ROCHA*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS T. HAWKER; JOHN J. INCANDELA; DAVE KRAECHAN; EDWIN JAY LEE; and EDWARD J. ROCHA<br>*Plaintiffs*<br><br>v.<br><br>BANCINSURANCE, INC.; FEDERAL DEPOSIT INSURANCE CORPORATION; and DOES 1 through 10<br>*Defendants* | Civil Action No. _____<br><br>**COMPLAINT**<br><br><br><br><u>**JURY DEMANDED**</u> |

**INTRODUCTION**

1.     This action arises out of defendant BancInsure's ("BancInsure") precipitous and wrongful denial of insurance coverage in connection with a civil action filed by the Federal Deposit Insurance Corporation (the "Civil Action"), pending in this Court, under a "directors and officers" liability insurance policy that it issued which provides coverage for the costs of defense and certain other liabilities arising out of or related to civil actions.  Plaintiffs Thomas T. Hawker, John J. Incandela, Dave Kraechan, Edwin Jay Lee, and Edward Rocha are all former officers of County Bank, a California state-chartered  bank ("County" or "Bank"), and are defendants in the Civil Action.  Plaintiffs are each insureds under said BancInsure insurance policy and are entitled to the benefits it provides. The Civil

1
**COMPLAINT**
CASE NO. _____

Action alleges that Plaintiffs were negligent and breached their fiduciary duty in connection with the lending function of County. Plaintiffs have incurred substantial costs and expenses in defense of the Civil Action and have made demand for payment of such costs and expenses and indemnity in full for all legal liabilities as provided by the policy. BancInsure has denied that it has an obligation to pay defense costs and has wrongfully refused to indemnify Plaintiffs in connection with the Civil Action under the BancInsure policy. Therefore, Plaintiffs seek a declaration of the rights, duties and responsibilities of the parties under the policy, damages for breach of contract, and damages, including punitive damages, for breach of the duty of good faith and fair dealing.

## THE PARTIES

2.      Plaintiff Thomas T. Hawker is a resident of California. Hawker was a director and former Chief Executive Officer of the Bank, a California corporation that had its principal place of business in Merced, California until the Bank was closed by the California Department of Financial Institutions and the Federal Deposit Insurance Corporation ("FDIC") was named as its receiver in February 2009.

3.      Plaintiff John J. Incandela is a resident of Illinois. Incandela was the Chief Credit Officer of the Bank, a California corporation that had its principal place of business in Merced California until the Bank was closed by the California Department of Financial Institutions and the Federal Deposit Insurance Corporation ("FDIC") was named as its receiver in February 2009.

4.      Plaintiff Dave Kraechan is a resident of California. Kraechan was a former Senior Vice President of County Bank, a California corporation that had its principal place of business in Merced, California until the Bank was closed by the California Department of Financial Institutions and the Federal Deposit Insurance Corporation ("FDIC") was named as its receiver in February 2009

5.      Plaintiff Edwin Jay Lee is a resident of California. Lee was a former Credit Administrator of County Bank, a California corporation that had its principal place of business in Merced, California until the Bank was closed by the California Department of Financial Institutions and the Federal Deposit

Insurance Corporation ("FDIC") was named as its receiver in February 2009.

6. Plaintiff Edward J. Rocha is a resident of California. Rocha was a former Chief Operating Officer of County Bank, a California corporation that had its principal place of business in Merced, California until the Bank was closed by the California Department of Financial Institutions and the Federal Deposit Insurance Corporation ("FDIC") was named as its receiver in February 2009.

7. Defendant BancInsure, Inc. is a stock insurance company incorporated under the laws of the state of Oklahoma and is registered with the California Department of Insurance.

8. The FDIC is an independent agency of the U.S. government responsible for preserving and promoting the public's confidence in the banking system by insuring deposits as well as monitoring and addressing risks to the insurance deposit fund. The FDIC is the Plaintiff in the Civil Action and therefore has an interest in the declaratory relief cause of action stated herein.

9. The true name of defendants sued as Does are unknown to Plaintiff. Doe defendants in concert with the named defendants contributed to the losses Plaintiff suffered as detailed herein.

## JURISDICTION

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 2201. The amount in controversy exceeds $75,000.

11. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391, because the events and/or omissions giving rise to this Complaint occurred in this District.

## THE BANCINSURE D&O POLICY

12. BancInsure sold and issued to Capital Corporation of the West, a California corporation ("Capital Corp."), the bank holding company of County, a Directors and Officers Liability Insurance Policy No. 04DO00367-2 (the "D&O Policy"), effective January 19, 2006 to January 18, 2009. The Bank was the wholly-owned subsidiary of Capital Corp of the West. The D&O Policy had limits of liability of $10 million. A copy of the D&O Policy is attached hereto as Exhibit A and is incorporated

herein by reference.

13. The D&O Policy provided coverage, for among other things, any loss incurred by officers of County not indemnified by County or Capital Corp., as follows:

> [BancInsure] will pay on behalf of the Insured, Loss in excess of the applicable Retention amount shown in Item 8 of the Declarations which the Insured shall become legally obligated to pay…

14. The D&O Policy defines "Insured" as "any entity in Item 1 of the Declarations of the Basic Policy and its employees acting within the scope of their employment".

15. The D&O Policy defines "Loss" as "any amount that the Insured is legally obligated to pay for any Claim or Claims made against it for Wrongful Acts as to which coverage applies, and shall include but not be limited to damages, judgments, settlements, and reasonable Defense Costs".

16. The D&O Policy defines "Wrongful Act" as any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Insured".

17. The D&O Policy included an "Insured versus Insured Exclusion" in Section V, Number 11 stating that there would be no coverage for a "Claim by, or on behalf of, or at the behest of, any other Insured Person, the Company, or any successor, trustee, assignee or receiver of the Company".

18. The D&O Policy also contained a "Regulatory Exclusion" in Section V, Number 12, stating that there would no coverage for:

> any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization. ("Agency").
> This exclusion shall include, but not be limited to, any type of legal action which any such Agency may bring as receiver, conservator, trustee, liquidator, rehabilitator or in any capacity, whether such action or proceeding is brought in the name of such Agency or by or on behalf of such Agency in the name of any other entity or solely in the name of any third party…

19. In order to avoid the application of the "Regulatory Exclusion", Capital Corp. purchased a Regulatory Exclusion Endorsement ("Endorsement") which was added to the D&O Policy and provided coverage for:

> …any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization. This exclusion shall include, but not be limited to, any type of legal action which any such Agency may bring as receiver … whether such action or proceeding is brought in the name of such Agency or by or on behalf of such Agency in the name of any other entity…

20. The Regulatory Exclusion Endorsement specifically amends Section V, Number 12 of the D&O Policy. If BancInsure had intended for the Insured versus Insured Exclusion in the D&O Policy to implicate clams by the FDIC as receiver, the Regulatory Exclusion Endorsement should have also amended Section V, Number 11 of the D&O Policy.

21. The D&O Policy provided that BancInsure would advance Defense Costs in the event that a Claim was made by the FDIC as receiver against a director or officer such as Plaintiffs.

**THE BANCINSURE EXTENDED PROFESSIONAL LIABILITY POLICY**

22. In the fall of 2007, prior to the expiration of the term of the D&O Policy, Capital Corp. requested that BancInsure provide an additional $2.5 million in Side A coverage bringing the total limit to $12.5 million, in order to provide additional protection for its officers and directors.

23. Instead of simply adding additional Side A coverage to the existing D&O Policy, BancInsure advised its Insured that broader coverage was available on its new policy form, the Extended Professional Liability Policy ("EPL Policy").

24. Based upon these representations, and with the understanding that the EPL Policy provided broader coverage for its officers and directors than did the existing D&O Policy, Capital Corp. bound the EPL Policy effective on January 19, 2008. A copy of the EPL Policy is attached hereto as

Exhibit B and is incorporated herein by reference. An Excess Endorsement was subsequently added raising the total Side A coverage to $14.5 million.

25. BancInsure did not provide a copy of the EPL Policy to Capital Corp. for more than a month after it had been bound. As such, Capital Corp. did not know the specifics of the issued EPL Policy until after the fact.

26. As it turned out, unlike the D&O Policy which had a Regulatory Exclusion that Capital Corp. had bought back from BancInsure to provide for coverage in connection with civil actions by the FDIC, the EPL Policy did not specifically exclude coverage for any claims by a regulatory agency. For example there was no reference to an exclusion for claims by the FDIC as receiver, as had been present in the D&O Policy prior to the addition of the Regulatory Exclusion Endorsement.

27. After receipt of the EPL Policy in early March 2008, Capital Corp. contacted BancInsure to raise a question about the Insured versus Insured Exclusion which was included in the EPL Policy which was very similar to the Insured versus Insured Exclusion in the D&O Policy and which would not have applied due to the Regulatory Exclusion Endorsement on the D&O Policy.

28. The Insured versus Insured Exclusion in the EPL Policy provided that there would be no coverage for "a claim by, or on behalf of, or at the behest of, any other insured person, the company, or any successor, trustee, assignee or receiver of the company…"

29. Capital Corp. suggested to BancInsure that in the absence of the Regulatory Exclusion Endorsement, the Insured versus Insured Exclusion could be utilized by BancInsure to "preclude coverage for claims brought by receivers or bankruptcy trustees".

30. BancInsure responded "If there is a holding company, then it can be put in bankruptcy and have a receiver. However, the insured vs. insured exclusion in the Extended Professional Liability policy specifically excludes claims made by a receiver and we are not willing to change that wording. The Policy should not become a vehicle for the receiver to get funds for that corporation."

31. At no point did BancInsure state that the Insured versus Insured Exclusion was intended to preclude coverage for claims by bank regulators involving the Bank, nor did it include a Regulatory Exclusion similar to the one written into the D&O Policy. If BancInsure had intended a Regulatory Exclusion, it certainly could have included one in its new policy form.

### THE CLOSURE OF COUNTY AND BANKRUPTCY OF CAPITAL CORP.

32. On February 6, 2009, the California Department of Financial Institutions closed County and appointed the FDIC as receiver of the Bank.

33. On May 11, 2009, Capital Corp. filed a Chapter 11 bankruptcy proceeding in the U.S. Bankruptcy Court for the Eastern District of California (Case Number 09-14298).

### THE CIVIL ACTION

34. On January 27, 2012, the FDIC filed suit against Plaintiffs in the Federal District Court for the Eastern District of California (Case Number 12-CV-00127), alleging negligence and breach of fiduciary duty.

35. The monetary damages sought by the FDIC in the Civil Action the FDIC as the successor to all claims originally held by County Bank, and of any stockholder, member, account holder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.

36. The FDIC's powers as a receiver of a bank that has been closed are much broader than those of a typical receiver as provided for by 12 U.S.C. Section 1821.

### INSURANCE COVERAGE CONTROVERSY

37. On January 30, 2012, Plaintiffs tendered the Civil Action to BancInsure to obtain insurance benefits, including advancement of defense costs.

38. On February 23, 2012, BancInsure's counsel responded that there was no coverage for the Civil Action because of the Insured versus Insured Exclusion in the EPL Policy since the FDIC was the receiver for the Bank.

39. In its denial of coverage, BancInsure did not state any other grounds other than the Insured versus Insured Exclusion for its denial of coverage.

40. In its denial of coverage, BancInsure suggested that its communications with Capital Corp. regarding the terms of its EPL Policy made it clear that the Insured versus Insured Exclusion would apply given that the FDIC is the receiver of the Bank.  Prior to the Bank's failure, no such statement was ever made to Capital Corp. or the Plaintiffs.

41. Plaintiffs have satisfied all of their obligations under the terms of the EPL Policy whereas BancInsure has not.

42. To date, Plaintiffs have incurred, and continue to incur, substantial defense costs not advanced by BancInsure in defending the Civil Action, in excess of the jurisdictional minimum of this Court.

**FIRST CLAIM FOR RELIEF: DECLARATORY JUDGMENT ON BANCINSURE'S OBLIGATION TO PROVIDE COVERAGE FOR THE CIVIL CLAIM**
**(As Against All Defendants)**

43. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 42.

44. BancInsure is obligated under the Policy to pay in full the costs of Plaintiffs' defense incurred or to be incurred as well as any indemnity owed in the future in connection with the Civil Action.

45. BancInsure has repudiated, failed to honor, and refused to accept its obligation to pay in full the defense costs incurred or to be incurred as well as any indemnity owed in the future in connection with the Civil Action by Plaintiffs.

46. The FDIC as Plaintiff in the Civil Action has a direct interest in the outcome of the coverage dispute as it will affect the availability of coverage for the claims made in the Civil Action.

47. By reason of the foregoing, an actual and justiciable controversy presently exists between Plaintiffs, BancInsure and FDIC concerning BancInsure's obligation to pay in full for the defense costs

incurred or to be incurred as well as any indemnity owed in the future in connection with the Civil Action.

48. Accordingly, Plaintiffs seek a declaration that BancInsure's denial of coverage is wrongful under the EPL Policy, and that BancInsure has an obligation under the Policy to pay in full the costs of their defense and any indemnity owed.

**SECOND CLAIM FOR RELIEF: BANCINSURE'S BREACH OF CONTRACT**
**(As Against BancInsure, Inc.)**

49. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 48.5

50. BancInsure has breached its obligations to Plaintiff by failing to fulfill completely its obligation to pay, among other things, the full costs of Plaintiffs' defense, and the full legal liabilities of Plaintiffs, including all sums spent or that will be spent in settlement, in connection with the Civil Action.

51. As a direct and proximate result of BancInsure's breaches of contract, which are continuing to at least the date of this Complaint, BancInsure has deprived Plaintiffs of the benefit of the insurance policies for which substantial amounts in premiums were paid for their benefit. As a direct and proximate result of BancInsure's acts, Plaintiffs have been damaged in an amount to be proved at trial, but that is in excess of the jurisdictional requirements of this Court.

**THIRD CLAIM FOR RELIEF: INSURANCE CARRIER BAD FAITH**
**(As Against BancInsure, Inc.)**

52. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 51.

53. As an insurance company selling insurance in California, BancInsure has an obligation to Plaintiffs to handle their claims for coverage reasonably and in good faith. In contravention of its duties and obligations under the Policy, under insurance industry custom, practice and standards, and under law, BancInsure:

(a) has decided without reasonable basis, to deny coverage for claims made in connection with

the Civil Action and repudiated its obligation under the policy to pay in full Plaintiffs' legal liabilities;

(b) has failed to conduct a reasonable and thorough investigation of the claims made in connection with the Civil Action and of possible bases for coverage including the existence of extensive case law finding that the Insured versus Insured Exclusion would not apply in a claim by the FDIC against officers and directors of failed banks, all in violation of accepted insurance industry custom, practice and standards and its duties to Plaintiffs;

(c) has asserted, without any reasonable basis, and without regard to its obligation to pay and indemnify Plaintiffs, that there is no coverage under the Policy for the Civil Action despite its failure to write into the EPL Policy a Regulatory Exclusion, instead relying on the Insured versus Insured Exclusion which addresses collusive or friendly lawsuits;

(d) has intentionally and willfully refused to honor its obligations, including those under the Policy.

54. BancInsure did the things and committed the acts alleged above for the purpose of consciously withholding from Plaintiffs the rights and benefits to which they are entitled and without considering the interests of its insureds at least to the same extent as it did its own interests.

55. BancInsure's acts are inconsistent with the reasonable expectations of its Insured, are contrary to established claims and practices and legal requirements, are contrary to the express terms of the EPL Policy, and constitute bad faith.

56. BancInsure's conduct is and has been done with a conscious disregard of its Insured's rights as beneficiary of the insurance at issue.

57. In light of information, facts, and relevant law to the contrary, BancInsure, by acting as alleged above, consciously disregarded Plaintiffs' rights and has prejudiced, and continues to prejudice, Plaintiffs in their ability to defend themselves in the Civil Action and forcing Plaintiffs to incur substantial financial losses in connection with the Civil Action.

58. BancInsure's actions have exposed Plaintiffs to potential ruinous liability with respect to the Civil Action in contravention of its duty created upon which Plaintiffs relied.

59. BancInsure has ignored its Insureds' interests and concerns, through oppressive, malicious and fraudulent conduct within the meaning of California Civil Code Section 3294.

60. Therefore, Plaintiffs are entitled to recover punitive damages from BancInsure in an amount sufficient to punish and make an example of BancInsure and to deter similar conduct in the future.

61. Pursuant to the holding in *Brandt v. Superior Court,* 37 Cal. 3d 813, 210 Cal. Rptr. 211 (1985), Plaintiffs are entitled to recover all attorneys' fees and costs that they reasonably incur, in their efforts to obtain the benefits of insurance that have been, and continue to be, wrongfully and in bad faith withheld by BancInsure, plus interest thereon

**FOURTH CLAIM FOR RELIEF: REFORMATION**
**(As Against BancInsure, Inc.)**

62. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 61.

63. When Capital Corp. purchased the D&O Policy, it specifically obtained coverage for its officers and directors in connection with any claims by regulatory agencies, including the FDIC in the role of receiver of the Bank.

64. The D&O Policy had not expired when Capital Corp. contacted BancInsure to increase its Side A limits and thus provide additional coverage for officers and directors.

65. Rather than increasing the limits on the D&O Policy, BancInsure offered to "renew" the coverage on its new, broader and more streamlined EPL Policy.

66. Capital Corp. and Plaintitffs reasonably relied on BancInsure's representations in regards to the extent of coverage.

67. During communications with BancInsure after binding of the EPL Policy, the carrier never specifically stated or disclosed that a claim by a regulatory agency in the role of receiver would not

be covered.

68. Capital Corp. reasonably relied on the absence of a Regulatory Exclusion in the EPL Policy and its communications with the carrier in which BancInsure narrowly described the Insured versus Insured Exclusion that "The policy should not become a vehicle for the receiver to get funds for the corporation."

69. Capital Corp. understood that the EPL Policy was broader coverage than the D&O Policy and therefore concluded that there was in fact coverage for regulatory actions, including the FDIC as a receiver since that coverage existed under the D&O Policy.

70. Given BancInsure's interpretation of the Insured versus Insured Exclusion, Capital Corp. and Plaintiffs would have been better off not switching to the supposedly broader EPL Policy and likely would have realized this if the issued policy had been provided in a timely manner.

71. Given all of the above, the EPL Policy does not accurately reflect the coverage that Capital Corp. contracted with BancInsure to provide. Accordingly, the Policy should be reformed to provide coverage for Plaintiffs in connection with the Civil Suit.

WHEREFORE, Plaintiffs request this Court to enter a judgment as follows:

1. With respect to the First Claim, a declaration that BancInsure is obligated under the terms and conditions of the EPL Policy to pay in full the costs of Plaintiffs' defense incurred or to be incurred as well as any indemnity owed in the future in connection with the Civil Action., subject only to the limits of liability set forth in the Policy.

2. With respect to the Second Claim, for damages according to proof at the time of trial, plus interest;

3. With respect to the Third Claim:

a. Damages according to proof at the time of trial;

b. Reasonable attorneys' fees and costs incurred in obtaining the benefits due under the

Policy according to proof at the time of trial;

c. Interest on such attorneys' fees and costs;

d. Punitive damages in an amount to be determined at the time of trial.

4. With respect to the Fourth Claim, for reformation of the EPL Policy to provide coverage for the Civil Action.

5. With respect to all claims:

a. Plaintiff's costs of suit incurred herein; and

b. For such other, further, and/or different relief as the Court may deem just and proper.

DATED: July 30, 2012

                                      Joseph and Cohen, Professional Corporation

                                      By:_____/s/_____
                                                Jonathan M. Cohen