1

2

3

4

5

6

7

8

9

10         **IN THE UNITED STATES DISTRICT COURT**

11         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13
THOMAS T. HAWKER, et al.,                          CASE NO. CV F 12-1261 LJO SAB
14
                    Plaintiff,               **ORDER ON BANCINSURE, INC.'S**
15                                            **F.R.Civ.P. 12 MOTION TO DISMISS**
          vs.                                (Doc. 21)
16
BANCINSURANCE, INC., et al.,
17
                    Defendants.
18    _____/

19           **PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

20         Judges in the Eastern District of California carry the heaviest caseload in the nation, and this

21   Court is unable to devote inordinate time and resources to individual cases and matters.  This Court

22   cannot address all arguments, evidence and matters raised by parties and addresses only the arguments,

23   evidence and matters necessary to reach the decision in this order given the shortage of district judges

24   and staff.  The parties and counsel are encouraged to contact the offices of United States Senators Diane

25   Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action.

26   The parties are required to reconsider consent to a Magistrate Judge to conduct all further proceedings

27   in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that

28   of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

                                          1

1   Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension

2   mid-trial to accommodate criminal matters.  Civil trials are no longer reset to a later date if Judge O'Neill

3   is unavailable on the original date set for trial.  Moreover, this Court's Fresno Division randomly and

4   without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as

5   visiting judges.  In the absence of Magistrate Judge consent, this action is subject to reassignment to a

6   U.S. District Judge from outside the Eastern District of California.

7                                          **INTRODUCTION**

8        Defendant insurer Bancinsure, Inc. ("Bancinsure") seeks to dismiss as time barred and

9   improperly pled plaintiff insureds'[1] reformation claim arising from Bancinsure's denial of costs to

10  defend plaintiffs in an underlying action brought by the Federal Deposit Insurance Corporation

11  ("FDIC").  Plaintiffs respond that their operative Complaint ("complaint") avoids the limitations defense

12  and adequately pleads a reformation claim.  This Court considered Bancinsure's F.R.Civ.P. 12(b)(6)

13  motion to dismiss on the record without a hearing, pursuant to Local Rule 230(g).  For the reasons

14  discussed below, this Court DENIES dismissal of the reformation claim based on the limitations defense

15  but DISMISSES the reformation claim with leave to amend to satisfy pleading requirements.

16                                          **BACKGROUND**[2]

17                                             **Summary**

18       The plaintiffs are former officers and directors of County Bank, which was closed by the

19  California Department of Financial Institutions.  County Bank was a wholly-owned subsidiary of Capital

20  Corp. of the West ("CCW"), a bank holding company.  In February 2009, FDIC became County Bank's

21  receiver.  FDIC pursues in a separate action in this Court negligence and fiduciary claims against

22  plaintiffs and for which Bancinsure has denied defense costs under a professional liability policy issued

23  to CCW.  Plaintiffs pursue insurance coverage and bad faith claims against Bancinsure, which challenges

24  the complaint's reformation and punitive damages claims.

25

26       [1]    The plaintiff insureds are Thomas T. Hawker, John J. Incandela, Dave Kraechan, Edwin Jay Lee and
     Edward J. Rocha and will be referred to collectively as "plaintiffs."

27
         [2]    The factual recitation is derived generally from the complaint and other matters which this Court may
28   consider.

**Original Directors And Officers Liability Policy**

Bancinsure issued to CCW a directors and officers liability policy ("D & O policy"), effective during January 2006 to January 2009 with a $10 million liability limit.  The D & O policy included an insured v. insured exclusion ("insured v. insured exclusion") to exclude coverage for "a Claim by, or on behalf of, or at the behest of, any other Insured Person, the Company, or any successor, trustee, assignee or receiver of the Company . . ."  Plaintiffs note that the insured v. insured exclusion prevents coverage for collusive claims among insureds.

The D & O policy also included a regulatory exclusion ("regulatory exclusion") to exclude coverage for:

> any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization ("Agency").

> This exclusion shall include . . . any type of legal action which any such Agency may bring as receiver, conservator, trustee, liquidator, rehabilitator or in any capacity, whether such action or proceeding is brought in the name of such Agency or by or on behalf of such Agency in the name of any other entity or solely in the name of any third party.

Plaintiffs note that the regulatory exclusion prevents coverage for claims by regulatory agencies or deposit insurance organizations, including the FDIC.

To avoid the regulatory exclusion, CCW purchased a regulatory exclusion endorsement ("regulatory exclusion endorsement") which amended the D & O policy and deleted the regulatory exclusion.  The regulatory exclusion endorsement states: "Nothing herein contained shall be held to vary, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy other than as above stated."

**Subsequent Extended Professional Liability Policy**

In fall 2007, prior to expiration of the D & O policy, CCW requested up to $12.5 million liability coverage for officers and directors.  The complaint alleges that rather than add additional coverage to the D & O policy, Bancinsure advised that "broader coverage was available on its new policy form, the Extended Professional Liability Policy" ("EPL policy").  Based upon such representation and with its understanding of broader coverage, CCW bound the EPL policy effective January 19, 2008.  The D & O policy was canceled.

3

1    The EPL policy includes an insured v. insured exclusion nearly identical to the D & O policy and

2    which excludes coverage for "a claim by, or on behalf of, or at the behest of, any other insured person,

3    the company, or any successor, trustee, assignee or receiver of the company . . ." The EPL policy lacks

4    a regulatory exclusion and regulatory exclusion endorsement. The complaint alleges that unlike the D

5    & O policy, the EPL policy "did not specifically exclude coverage for any claims by a regulatory agency"

6    and "there was no reference to an exclusion for claims by the FDIC as receiver, as had been present in

7    the D & O Policy prior to the addition of the Regulatory Exclusion Endorsement."

8    Plaintiffs note the EPL policy's absence of an exclusion for claims by the FDIC as receiver

9    although such an exclusion was in the D & O policy prior to the regulatory exclusion endorsement.

10    **Communications As To Coverage**

11    In early March 2008, CCW questioned Bancinsure about the EPL policy's insured v. insured

12    exclusion. CCW suggested to Bancinsure that in absence of a regulatory exclusion endorsement,

13    Bancinsure could use the insured v. insured exclusion to "preclude coverage for claims brought by

14    receivers or bankruptcy trustees." Bancinsure responded:

15    If there is a holding company, then it can be put in bankruptcy and have a
      receiver. However, the insured v. insured exclusion in the Extended Professional
16    Liability policy specifically excludes claims made by a receiver and we are not willing
      to change that wording. The Policy should not become a vehicle for the receiver to get
17    funds for that corporation.

18    The complaint alleges: "At no point did BancInsure state that the Insured versus Insured

19    Exclusion was intended to preclude coverage for claims by bank regulators involving the Bank, nor did

20    it include a Regulatory Exclusion similar to the one written into the D&O Policy. If BancInsure had

21    intended a Regulatory Exclusion, it certainly could have included one in its new policy form."

22    **The FDIC Action**

23    On February 6, 2009, the California Department of Financial Institutions closed County Bank

24    and appointed the FDIC as County Bank's receiver.

25    On January 27, 2012, FDIC filed in this Court an action against plaintiffs to allege negligence

26    and fiduciary claims ("FDIC action"). The FDIC pursues claims as a successor to claims held by County

27    Bank.

28    / / /

4

**Bancinsure's Denial Of Coverage**

On January 30, 2012, plaintiffs tendered to Bancinsure the defense of the FDIC action.  On February 23, 2012, Bancinsure denied coverage for the FDIC action and invoked the EPL policy's insured v. insured exclusion given that FDIC is County Bank's receiver.  The complaint alleges that Bancinsure suggested that its communications "made it clear that the Insured versus Insured Exclusion would apply given that the FDIC is the receiver of the Bank.  Prior to the Bank's failure, no such statement was ever made to Capital Corp. or the Plaintiffs."

**Plaintiffs' Claims**

The complaint alleges insurance coverage and bad claims arising from Bancinsure's denial to defend the FDIC action.  Bancinsure challenges the complaint's (fourth) reformation claim that the EPL policy "should be reformed to provide coverage" to plaintiffs to defend the FDIC action.  The reformation claim alleges that CCW:

1. "[R]easonably relied on the absence of a Regulatory Exclusion in the EPL Policy and its communications with the carrier in which Bancinsure narrowly described the Insured versus Insured Exclusion that 'The policy should not become a vehicle for the receiver to get funds for the corporation'"; and

2. "[U]nderstood that the EPL Policy was broader coverage than the D&O Policy and therefore concluded that there was in fact coverage for regulatory actions, including the FDIC as a receiver since that coverage existed under the D&O Policy."

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

Bancinsure challenges the complaint's reformation claim as time barred and inadequately pled.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state

1  a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
2  plaintiff pleads factual content that allows the court to draw the reasonable inference that
   the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
3  akin to a "probability requirement," but it asks for more than a sheer possibility that a
   defendant has acted unlawfully.  (Citations omitted.)

4  After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive

5  [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be

6  plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d

7  962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

8  The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

9  First, the tenet that a court must accept as true all of the allegations contained in
   a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
10 a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
   only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
11 . Determining whether a complaint states a plausible claim for relief will . . . be a
   context-specific task that requires the reviewing court to draw on its judicial experience
12 and common sense. . . . But where the well-pleaded facts do not permit the court to infer
   more than the mere possibility of misconduct, the complaint has alleged – but it has not
13 "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

14 In keeping with these principles a court considering a motion to dismiss can
   choose to begin by identifying pleadings that, because they are no more than conclusions,
15 are not entitled to the assumption of truth. While legal conclusions can provide the
   framework of a complaint, they must be supported by factual allegations. When there are
16 well-pleaded factual allegations, a court should assume their veracity and then determine
   whether they plausibly give rise to an entitlement to relief.

17

18 *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

19 Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate

20 the existence of an affirmative defense."  *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069

21 (11th Cir. 1984).  For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to

22 dismiss.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision*

23 *Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).

24 A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running

25 is apparent on the complaint's face.  *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear

26 on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may

27 be raised by a motion to dismiss accompanied by affidavits.  *Jablon*, 614 F.2d at 682; *Rauch v. Day and*

28 *Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

With these standards in mind, this Court turns to Bancinsure's challenges to the complaint's reformation claim.

### Reformation Principles

California Civil Code section 3399 addresses contract revision for mistake or fraud:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention . . .

Reformation's purpose "is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing." *Lemoge Elec. v. San Mateo County*, 46 Cal.2d 659, 663, 297 P.2d 638 (1956). For a plaintiff "to obtain this relief there must have been an understanding between the parties on all essential terms, otherwise there would be no standard to which the writing could be reformed." *Lemoge Elec.*, 46 Cal.2d at 663, 297 P.2d 638.

The California Supreme Court has further explained circumstances which warrant reformation:

> Reformation may be had for a mutual mistake or for the mistake of one party which the other knew or suspected, but in either situation the purpose of the remedy is to make the written contract truly express the intention of the parties. Where the failure of the written contract to express the intention of the parties is due to the inadvertence of both of them, the mistake is mutual and the contract may be revised on the application of the party aggrieved. . . . When only one party to the contract is mistaken as to its provisions and his mistake is known or suspected by the other, the contract may be reformed to express a single intention entertained by both parties. . . . Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral.

*Lemoge Elec.*, 46 Cal.2d at 663-664, 297 P.2d 638.

A mistake to invoke reformation "may be the mutual error of both parties to the contract, or the oversight of one party which the other knew or suspected at the time of entering the agreement. The party seeking the revision of the writing must show how it is 'aggrieved' by the mistake, and define the actual intention of the contracting parties." *American Home Ins. Co. v. Travelers Indemnity Co.*, 122 Cal.App.3d 951, 961, 175 Cal.Rptr. 826 (1981).

### Limitations Defense

Bancinsure invokes the three-year limitations defense under California Code of Civil Procedure section 338(d) for an "action for relief on the ground of fraud or mistake." A claim grounded in fraud

1    or mistake does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud

2    or mistake." Cal. Code. Civ. Proc., § 338(d).

3    ***Discovery And Accrual Of Reformation Claim***

4    Bancinsure contends that plaintiffs discovered their reformation claim more than three years prior

5    August 1, 2012 filing of this action to render the reformation claim time barred.  Plaintiffs respond that

6    the reformation claim did not accrue until their claim was denied.

7    "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or

8    should suspect that her injury was caused by wrongdoing, that someone has done something wrong to

9    her."  *Clark v. Baxter Healthcare Corp.*, 83 Cal.App.4th 1048, 1055, 100 Cal.Rptr.2d 223 (2000).

10   "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and

11   are charged with knowledge of the information that would have been revealed by such an investigation."

12   *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005).

13   Bancinsure argues that plaintiffs brought the reformation claim more than three years after

14   plaintiffs discovered or should have discovered lack of coverage for receiver claims given the

15   complaint's allegations that:

16         1.    Bancinsure issued the EPL policy effective January 19, 2008 and provided a copy of it
17               in early 2008;

18         2.    In early March 2008, CCW questioned Bancinsure about the EPL policy's insured v.
19               insured exclusion "which would not have applied due to the Regulatory Exclusion
20               Endorsement on the D & O Policy";

21         3.    CCW suggested to Bancinsure that in absence of a regulatory exclusion endorsement,
22               Bancinsure could use the insured v. insured exclusion to "preclude coverage for claims
23               brought by receivers or bankruptcy trustees."

24         4.    Bancinsure responded:

25                     If there is a holding company, then it can be put in bankruptcy and
               have a receiver.  However, the insured v. insured exclusion in the
26               Extended Professional Liability policy specifically excludes claims made
               by a receiver and we are not willing to change that wording.  The Policy
27               should not become a vehicle for the receiver to get funds for that
               corporation.

28

9

1     Bancinsure triggers the running of the reformation claim's limitations period from "when the

2   unexpected terms are either discovered or reasonably discoverable from review of the contract."

3   Bancinsure argues that there is no basis to toll the reformation claim's limitations period "until the time

4   of an actual claim and tender" given the complaint's allegations that CCW was aware of coverage

5   differences between the D & O and EPL policies.  Bancinsure faults the complaint's absence of

6   allegations that plaintiffs investigated their EPL policy rights and concludes that the limitations period

7   "ran from the time CCW expressed concern that its rights under the EPL Policy had been altered."

8     Plaintiffs respond that the complaint does not admit CCW's knowledge of reduced coverage

9   upon issuance of the EPL policy.  Plaintiffs argue they did not know of Bancinsure's position that the

10   insured v. insured exclusion barred post-receivership claims by FDIC until Bancinsure denied coverage,

11   especially given that the EPL policy was a new form that lacked the regulatory exclusion and confirmed

12   CCW's belief that the EPL policy provided broader coverage than the D & O policy.

13     The complaint fails to demonstrate that the reformation claim is time barred.  Bancinsurance

14   focuses on allegations after issuance of the EPL policy.  Bancinsurance ignores complaint allegations

15   that prior to issuance of the EPL policy, Bancinsurance advised that "broader coverage was available"

16   with the EPL policy.  With such alleged representation, plaintiffs are not charged with discovery of the

17   reformation claim at issuance of the EPL policy.  Moreover, the record suggests a factual issue whether

18   the claim accrued prior to the January 27, 2012 filing of the FDIC action when invocation of the insured

19   v. insured exclusion ripened into an issue to litigate.

20                                   ***Fraudulent Concealment***

21     Bancinsure argues that its passive conduct in failing to offer "additional legal opinions" fails to

22   toll the limitations period.  Bancinsure notes that "the limitations period begins when the plaintiff

23   suspects, or should suspect, that she has been wronged" to place a plaintiff on inquiry notice.  *See Jolly*

24   *v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1113, 245 Cal.Rptr. 658 (1988).

25     Bancinsure points to the complaint's absence of facts to invoke the fraudulent concealment

26   doctrine:

27          In some cases, the conduct of a defendant will toll the statute of limitations under
        the doctrine of fraudulent concealment. The doctrine is properly invoked only if a
28        plaintiff establishes "affirmative conduct upon the part of the defendant which would,

1   under the circumstances of the case, lead a reasonable person to believe that he did not
2   have a claim for relief."

3   *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir.1987) (quoting *Gibson v. United States*, 781

4   F.2d 1334, 1345 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987)).

5   Additionally, a plaintiff "must demonstrate that [it] had neither actual nor constructive notice of

6   the facts constituting [its] claims for relief." *Volk*, 816 F.2d at 1415.

7   "The doctrine of fraudulent concealment [for tolling the statute of limitations] does not come into

8   play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice

9   of a potential claim." *Hobson v. Wilson,* 737 F.2d 1, 35 (D.C. Cir. 1984), *cert. denied,* 105 S.Ct. 1843

10   (1985).

11   Bancinsure characterizes the complaint to allege only Bancinsure's "failure to provide additional

12   coverage advice" or "a supplemental opinion about the legal differences between the D & O Policy and

13   the EPL Policy in 2008." Bancinsure points to the lack of duty to provide "unsolicited advice" to which

14   plaintiffs claim they were entitled. Bancinsure concludes that its alleged failure to provide supplemental

15   coverage advice as to the scope of prospective coverage fails to support plaintiffs' delayed discovery to

16   toll the limitations period.

17   "[A]bsent some conduct on the part of the insurer consistent with assuming broader duties, the

18   insurer's fiduciary duties are limited to those arising out of the insurance contract and do not encompass

19   the duties" to procure additional coverage or to advise about the availability of additional coverage.

20   *Gibson v. Government Employees Ins. Co.,* 162 Cal.App.3d 441, 443, 208 Cal.Rptr. 511 (1984).

21   Moreover, there is no duty among parties "dealing at arm's length . . . to explain to each other the terms

22   of a written contract." *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir. 1998),

23   overruled on other grounds, *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931 (9th Cir. 2001).

24   The complaint does not raise a fraudulent concealment issue in the absence of allegations of

25   Bancinsure's affirmative conduct to lead CCW to believe that plaintiffs did not have a claim for relief.

26   The complaint relies in pertinent part on Bancinsure's affirmative allegation that the EPL policy

27   provided broader coverage than the D & O policy. Bancinsure's passive conduct and failure to assume

28   broader duties are immaterial under the circumstances alleged in the complaint. In sum, the reformation

11

1   claim survives the limitations defense.

2   **Pleading Fraud And/Or Reformation**

3   In addition to asserting a limitations defense, Bancinsure challenges the complaint's pleading of

4   a fraud and/or reformation claim.

5   *Fraud Elements*

6   The elements of a California fraud claim are: (1) misrepresentation (false representation,

7   concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

8   to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

9   631, 638, 49 Cal.Rptr.2d 377 (1996).

10   "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

11   specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

12   156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce

13   the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

14   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

15   *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336. "The absence of any one of these required elements

16   will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

17   Cal.Rptr. 355 (1986).

18   *Misrepresentation Or Nondisclosure*

19   Bancinsure faults the complaint's absence of facts of its misrepresentation or nondisclosure to

20   support a fraud or reformation claim. Bancinsure points to complaint allegations to attribute to

21   Bancinsure representations that:

22       1.   Claims by receivers would not be covered;

23       2.   The EPL policy should not become a vehicle for a receiver to get funds for the

24          corporation; and

25       3.   The EPL policy provided broader coverage than the D & O policy.

26   Bancinsure characterizes its alleged statements as inactionable opinion "as to the hypothetical scope of

27   coverage not made with respect to a specific claim." Bancinsure contends that "failure to provide a

28   clarifying opinion on claims by regulators acting as receivers clearly fails to meet the definition of an

1   actionable non-disclosure of fact."

2       "[E]xpressions of opinion are not generally treated as representations of fact, and thus are not

3   grounds for a misrepresentation cause of action." *Gentry v. eBay, Inc.*, 99 Cal.App.4th 816, 825, 121

4   Cal.Rptr.2d 703 (2002) (internal quotation omitted); *see Quan v. Truck Ins. Exchange*, 67 Cal.App.4th

5   583, 602, 79 Cal.Rptr.2d 134 (1998) ("opinion evidence is completely irrelevant to interpret an insurance

6   contract").  The doctrine of estoppel, based upon an insurer's conduct or action, fails "to bring within

7   the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Aetna*

8   *Casualty & Surety Co. v. Richmond*, 76 Cal.App.3d 645, 653, 143 Cal.Rptr. 75 (1977).

9       Plaintiffs explain that Bancinsure misses the key basis of the reformation claim which is the

10  allegation that Bancinsure advised that the EPL policy provided "broader coverage" to induce CCW to

11  obtain it over the D & O policy.

12      The complaint specifically alleges that rather than add additional coverage to the D & O policy,

13  Bancinsure advised that "broader coverage was available on its new policy form," the EPL policy.  The

14  complaint alleges a representation to satisfy that fraud element.

15                                    ***Justifiable Reliance***

16      Bancinsure challenges complaint allegations to support plaintiffs' justifiable reliance on

17  Bancinsure's alleged statements as to EPL policy coverage.  Bancinsure notes that the complaint

18  references two Bancinsure statements consistent with the EPL policy's insured v. insured exclusion of

19  no coverage for receivers' claims and the statement of an unidentified Bancinsure representative as to

20  the EPL policy's broader coverage.  Bancinsure contends that given the EPL policy's language, it was

21  not bound to clarify the absence of coverage for claims by a receiver and thus there is no support for the

22  justifiable reliance element.

23      "Generally the insured is bound by clear and conspicuous provisions in the policy even if

24  evidence suggests that the insured did not read or understand them." *Hadland v. NN Investors Life Ins.*

25  *Co.*, 24 Cal.App.4th 1578, 1586, 30 Cal.Rptr.2d 88 (1994) (internal quotations and citations omitted).

26  "[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can

27  come to only one conclusion based on the facts." *Guido v. Koopman*, 1 Cal.App.4th 837, 843, 2

28  Cal.Rptr.2d 437 (1991).

                                          13

1    Plaintiffs respond that the complaint satisfies the justifiable reliance element by alleging that

2    based on Bancinsurance's representations of the EPL policy's broader coverage, CCW "bound the EPL

3    Policy."

4    The gist of the complaint's justifiable reliance allegations is that Bancinsure's representation of

5    broader EPL policy coverage induced CCW to purchase the EPL policy and to cancel the D & O policy.

6    The complaint alleges justifiable reliance to satisfy that fraud element.

7                                    ***Particularity Pleading Standard***

8    Bancinsure faults the complaint's absence of specific allegations to support fraud or mistake-

9    based claims.  Plaintiffs offer no opposition to Bancinsure's criticism of unspecific allegations to support

10   fraud or mistake-based claims.

11   F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud

12   or mistake."[3]  In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule

13   9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141

14   (C.D. Cal. 2003).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy

15   F.R.Civ.P. 9(b)'s heightened pleading requirements.  *Vess*, 317 F.3d at 1107.[4]  A motion to dismiss a

16   claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional

17   equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim.  *Vess*, 317 F.3d at

18   1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of

19   the claim showing that the pleader is entitled to relief."

20   F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's

21   requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of

22   unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  F.R.Civ.P 9(b) requires

23

24        [3]        F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court
     will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the
25   Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess
     v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.
26   1995)(italics in original).

27        [4]        "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that
     course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and
28   the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

                                                       14

"specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

Bancinsure faults the complaint's absence of allegations to identify a Bancinsure representative

1    who allegedly asserted that EPL policy coverage was broader and other specifics to support a fraud

2    sounding claim.

3          Bancinsure is correct.  This Court construes plaintiffs' absence of opposition to Bancinsure's

4    particularity points as plaintiffs' concession that the complaint fails to satisfy F.R.Civ.P. 9(b).  Plaintiffs

5    are granted leave to attempt to satisfy F.R.Civ.P. 9(b) standards.

6                                               **Punitive Damages**

7          The complaint's (third) insurer bad faith claim alleges that Bancinsure denied coverage for the

8    FDIC action "without reasonable basis" and "failed to conduct a reasonable and thorough investigation."

9    The bad faith claim further alleges that Bancinsure ignored plaintiffs' interests "through oppressive,

10   malicious and fraudulent conduct" to warrant punitive damages.

11         Bancinsure faults the complaint's lack of facts of oppression, malice or fraud to impose punitive

12   damages on Bancinsure.

13         California Civil Code section 3294 ("section 3294") provides that in an action "for breach of an

14   obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear

15   and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ.

16   Code, § 3294(a).  Section 3294(c)(1)–(3) defines:

17         1.    "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff

18               or despicable conduct which is carried on by the defendant with a willful and conscious

19               disregard of the rights and safety of others";

20         2.    "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship

21               in conscious disregard of that person's rights"; and

22         3.    "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact

23               known to the defendant with the intention on the part of the defendant of thereby

24               depriving a person of property or legal rights or otherwise causing injury."

25         "Although the court will apply the substantive law embodied in section 3294, 'determinations

26   regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure.'"  *Jackson*

27   *v. East Bay Hosp.*, 980 F.Supp. 1341, 1353 (N.D. Cal. 1997).

28         Punitive damages are "available to a party who can plead and prove the facts and circumstances

                                                      16

set forth in Civil Code section 3294." *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196 Cal.Rptr. 117 (1983). "To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr. 246 (1976). Pleading the language in section 3294 "is not objectionable when sufficient facts are alleged to support the allegation." *Perkins v. Superior Court*, 117 Cal.App.3d 1, 6-7, 172 Cal.Rptr. 427 (1981).

In *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29, 122 Cal.Rptr. 218 (1975), the California Court of Appeal explained punitive damages pleading:

> When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. . . . When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. . . . When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him. (Citations omitted.)

"Allegations that the acts . . . were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law . . ." *Faulkner v. California Toll Bridge Authority*, 40 Cal.2d 317, 329, 253 P.2d 659 (1953); *see Letho v. Underground Construction Co.*, 69 Cal.App.3d 933, 944, 138 Cal.Rptr. 419 (1997) (facts and circumstances of fraud should be set out clearly, concisely, and with sufficient particularity to support punitive damages); *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1042, 13 Cal.Rptr.2d 133 (1992) (punitive damages claim is insufficient in that it is "devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud or malice."); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977) ("conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294").

Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases. *Henderson v. Security Pacific National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977).

Bancinsure is correct that the complaint seeks punitive damages based on insufficient facts that Bancinsure acted with requisite malice, oppression or fraud to support punitive damages claims. The complaint's bad faith claims, without more, fail to substantiate misconduct subject to punitive damages.

1   The complaint lacks sufficient allegations of Bancinsure's wrongdoing to impose punitive damages on

2   Bancinsure.  Since plaintiffs do not oppose dismissal of punitive damages claims, they are subject to

3   dismissal.

### Objection To Plaintiffs' Counsel

5           With its reply papers, Bancinsure asks this Court to clarify the appearance of Nossaman LLP

6   as counsel for FDIC.  Plaintiffs' papers reflect that Nossaman LLP appears for FDIC as an assignee of

7   plaintiffs' claims.  Bancinsure demonstrates no wrongdoing of Nossaman LLP to appear in such

8   capacity.  The result of such bald assertions is to vex plaintiffs and counsel and to burden this Court with

9   unnecessary tasks.

### CONCLUSION AND ORDER

11          For the reasons discussed above, this Court:

12      1.      DENIES dismissal of the reformation claim based on the three-year limitations defense;

13      2.      DISMISSES the reformation claim with leave to amend to attempt to satisfy F.R.Civ.P.

14              9(b) particularity requirements;

15      3.      DISMISSES with prejudice the complaint's punitive damages claims;

16      4.      ORDERS plaintiffs, no later than April 10, 2013, to file either: (1) papers to dismiss the

17              reformation claim; or (2) an amended complaint with new or additional allegations

18              limited to attempt to cure deficiencies in the reformation claim.  This Court does not plan

19              to grant plaintiffs any further attempt to amend the reformation claim or other claims;

20              and

21      5.      ORDERS Bancinsure, no later than April 25, 2013, to file either: (1) a F.R.Civ.P. 7(a)(2)

22              answer to the complaint if plaintiffs dismiss the reformation claim; or (2) proper papers

23              to respond to the amended complaint.  Any F.R.Civ.P. 12(b)(6) motion shall be limited

24              to the amended reformation claim, and this Court will not entertain a F.R.Civ.P. 12(b)(6)

25              motion as to other claims, which plaintiffs may not seek to amend without this Court's

26              order.

27   / / /

28   / / /

1          In sum, any attempts to amend the complaint or to pursue a further F.R.Civ.P. 12 challenge are

2    limited to the reformation claim.

3

4

5

6    IT IS SO ORDERED.

7    **Dated:**   **March 26, 2013**       **/s/  Lawrence J. O'Neill**

                               UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28