1

2

3

4

5

6

7

8                    # UNITED STATES DISTRICT COURT

9                         ## EASTERN DISTRICT OF CALIFORNIA

10

11    THOMAS T. HAWKER, et al.,              Case No.  1:12-cv-01261-SAB

12                  Plaintiffs,              ORDER GRANTING IN PART AND DENYING
                                             IN PART PLAINTIFF'S MOTION TO COMPEL
13           v.
                                             (ECF Nos. 61-68)
14    BANCINSURANCE, INC., et al.,
                                             THIRTY-DAY DEADLINE
15                  Defendants.

16

17                                      **I.**

18                        **PROCEDURAL BACKGROUND**

19           Plaintiffs Hawker, Kraechan, Incandela, Lee, and Rocha brought this diversity action

20    against Defendants BancInsurance, Inc. and BancInsure, Inc. ("Defendant" or "BancInsure") on

21    August 1, 2012, alleging wrongful denial of insurance coverage.  (ECF No. 1.)  A separate action

22    was brought by the Federal Deposit Insurance Corporation ("FDIC") against Plaintiffs to this

23    action which was settled and the FDIC, as receiver, ("FDIC-R") is now a plaintiff to this action

24    by assignment.  FDIC v. Hawker, No. 12-cv-00127-SAB (E.D. Cal.).  On November 27, 2013,

25    Plaintiffs brought a motion to compel production of documents.  (ECF No. 61.)

26           Plaintiff brings this motion to compel seeking documents that are being withheld or

27    redacted due to Defendant's assertion of privilege.  The issues here are whether BancInsure's

28    attorney is entitled to attorney-client privilege; whether the documents are entitled to work

                                            1

1    product protection; and whether common interest protection applies to the requested documents.

2    The Court heard oral argument on December 11, 2013.  (ECF No. 70.)  Counsel Patrick

3    Richard appeared telephonically for Plaintiff, and counsel Edward Donohue and Christopher

4    Borders appeared telephonically for Defendant.  Id.  Having considered the joint statement, the

5    declarations and exhibits attached thereto, arguments presented at the December 11, 2013

6    hearing, as well as the Court's file, the Court issues the following order.

7                                                          **II.**

8                                          **FACTUAL BACKGROUND**

9    Prior to April 2007, County Bank obtained director and officer ("D & O") insurance

10   coverage from BancInsure under two separate policy forms.  (Endorsement Changes to Directors

11   & Officers Liability Policy, ECF No. 63-3.)  The FDIC-R was eventually appointed as receiver

12   for County Bank.

13   On February 9, 2009, Defendant BancInsure received a letter from James Rockett,

14   attorney for Capital Corp of the West, providing notice that they had been informed that in the

15   event of a seizure of County Bank by state and federal regulators, it was likely that the FDIC-R

16   would commence an action against the directors of the Bank.  (Decl. of James Cross ¶ 4, ECF No.

17   64; James Rocket Letter attached as Exhibit A, ECF No. 64-1.)   In response, Defendant

18   BancInsure established a claim file, No. 4138p.  (ECF No. 64 at ¶ 4.)  The file was assigned to

19   Ted Equal of the adjustment firm of Kalchik Pratt & Associates ("KPA").  (Id. at ¶ 5.)  Between

20   February 2009 and August 28, 2009, KPA investigated the potential grounds for numerous

21   alternative claims that could be brought in the future.  (Id.)  KPA made periodic contact with Mr.

22   Rocket; and Mr. Equals communicated with the FDIC-R regarding records requests.  Reports on

23   the results of the investigation were made to BancInsure's Assistant Claims Manager and on

24   occasion to Mr. Cross.

25   On September 1, 2009, BancInsure received a potential claim notice including a direct

26   claim for damages or settlement by the FDIC-R and threatening litigation against BancInsure and

27   its insureds.  (Id. at ¶ 6; FDIC Letter attached as Exhibit 2, ECF No. 64-2.)  Upon receipt of the

28   demand letter, KPA and Defendant BancInsure recognized that they had a factual basis to decline

                                                          2

1   the claim under the policy.  (ECF No. 64 at ¶ 7.)  On September 1, 2009, Defendant consulted an

2   outside law firm, Hinshaw & Culbertson, and the firm was retained on September 2, 2009, in

3   anticipation of the litigation threatened.  (Id. at ¶ 11.)

4       Hinshaw & Culbertson prepared a series of position letters which were reviewed and

5   approved by BancInsure.  On September 14, 2009, Defendant advised the FDIC that it had no

6   legal right to make a direct claim against BancInsure and no right to report potential claims under

7   the policy.  (Id. at ¶ 12.)  In December 2009, Mr. Cross made the final decision that the claim

8   would be denied; and on December 8, 2009, Mr. Donohue of Hinshaw & Culbertson issued a

9   letter denying coverage.  (Id. at ¶ 13; ECF No. 64-9.)

10      In December 2009, Defendant received a series of demand letters from the FDIC-R and

11  certain insureds demanding that Defendant indemnify the loss based on the original demand by

12  the FDIC.  After receiving each of these communications, Defendant requested a legal evaluation

13  of the claim and consulted with counsel regarding the appropriate response, each demand was

14  denied.  (ECF No. 64 at ¶ 14.)

15                                        **III.**

16                                **LEGAL STANDARD**

17      "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

18  party's claim or defense. . . .  Relevant information need not be admissible at the trial if the

19  discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R.

20  Civ. P. 26(b)(1).

21                                        **IV.**

22                                  **DISCUSSION**

23      Plaintiff contends that Defendant has withheld documents improperly asserting the

24  attorney-client privilege and work product and common interest doctrine.  In a diversity case,

25  issues regarding privilege are determined under the state law governing the decision in the case.

26  Fed. R. Civ. P. 501; Star Editorial, Inc. v. U.S. District Court, 7 F.3d 856, 859 (9th Cir. 1993).

27  Since the decision in this action will be decided under California law, California law controls the

28  issue of the privilege seeking to be applied here.

                                          3

1

### A.       Defendant's Objections to Deposition Testimony

2    Defendant filed an objection to the deposition testimony of Van Butler and Donald Pratt

3    and interrogatory responses, attached as Exhibits G, H, and I to the Declaration of James H.

4    Vorhis.  (ECF No. 68.)  Defendant objects on the grounds of relevance, hearsay, and Rule 403 of

5    the Federal Rules of Civil Procedure.

6    All these documents relate to deposition questions and interrogatory responses in a

7    separate action, <u>Columbian Financial Corporation v. BancInsurance</u>, No. 08-cv-2642 CM/JPO (D.

8    Kan.), in which Plaintiff contends that Defendant made admissions that the Insured v. Insured

9    exclusion does not apply to claims by the FDIC.  (ECF No. 62 at 4.)  Defendant argues that

10   <u>Columbian Financial Corporation</u> did not involve the application of the Insured v. Insured

11   exclusion and involved a different policy form from which BancInsure made its coverage

12   determination here.  (ECF No. 68 at 4.)  Defendant contends that this evidence is irrelevant to the

13   issue before this Court, whether there has been a waiver of any privilege.

14   "Evidence is relevant if: (a)  it has a tendency to make a fact more or less probable than it

15   would be without the evidence; and (b) the fact is of consequence in determining the action."

16   Fed. R. Evid. 401.  In this instance, the Court is to determine whether the attorney-client privilege

17   or work-product doctrine applies to protect certain documents from disclosure and whether

18   reinsurance reports are discoverable.  While Plaintiff includes statements regarding Defendant

19   BancInsure taking a different position on the applicability of the Insured v. Insured exclusion in

20   another case in the statement of nature of action, it does not include argument regarding this

21   testimony in the motion.  To the extent that Plaintiff is now alleging that Defendant BancInsure

22   has changed its position on the Insured v. Insured exclusion and its applicability in this action, the

23   Court finds this testimony irrelevant to the issue to be decided here.  Defendant's objection on the

24   ground of relevance is sustained.  Since the evidence has been found to be irrelevant, the Court

25   declines to address objections on other grounds.

26

### B.       Attorney-Client Privilege

27   Plaintiff contends that Mr. Donohue was acting as a claims processor, and therefore, the

28   attorney-client privilege does not apply.  Pursuant to California law, the client "has a privilege to

4

1  refuse to disclose, and to prevent another from disclosing, a confidential communication between

2  client and lawyer. . . .  Cal. Evid. Code § 954.  A confidential communication is "information

3  transmitted between a client and his or her lawyer in the course of that relationship and in

4  confidence by a means which, so far as the client is aware, discloses the information to no third

5  persons other than those who are present to further the interest of the client in the consultation or

6  those to whom disclosure is reasonably necessary for the transmission of the information or the

7  accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion

8  formed and the advice given by the lawyer in the course of that relationship."  Cal. Evid. Code §

9  952.

10        The attorney client privilege is absolute and disclosure cannot be ordered regardless of

11  necessity, relevance, or any other circumstance particular in the case.  Costco Wholesale Corp. v.

12  Superior Court, 47 Cal.4th 725, 732 (2009).  The party claiming the privilege has the burden of

13  establishing the facts necessary to support a prima facie claim of privilege.  Costco Wholesale

14  Corp., 47 Cal.4th at 733.  Once the party asserting the privilege has met its burden, the

15  communication is presumed to be confidential and the party seeking disclosure has the burden to

16  establish that the communication was not confidential or that there are other reasons that the

17  privilege does not apply.  Id.

18        Plaintiff argues that Defendant has failed to carry its burden to assert attorney-client

19  privilege.  Plaintiff also argues that Mr. Donohue was engaged in fact finding, was acting as a

20  claims adjuster, and ultimately made the decision on coverage, and therefore, the attorney-client

21  privilege does not apply.  (Joint Statement Re Discovery Disagreement 7-13,[1] ECF No. 62.)

22        In this instance, Defendant has submitted evidence that after receiving notice of the claim,

23  a file was opened on February 9, 2009, it was assigned to KPA for an investigation into potential

24  claims that could arise.  After receiving notice of the claim on September 1, 2009, Defendant

25  determined that they had a factual basis to deny the claim.  Defendant hired Hinshaw &

26

27  [1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
CM/ECF electronic court docketing system.

28

1    Culbertson to provide a legal opinion regarding coverage.  Following Hinshaw & Culbertson

2    conducting a legal analysis, a legal opinion was provided recommending denying coverage.

3    Upon reviewing the legal opinion and consulting with Hinshaw & Culbertson, Mr. Cross made

4    the decision to deny coverage.  The Court must first determine if the dominant purpose of the

5    relationship between BancInsure, and Mr. Donohue was to render legal advice or to act as a

6    claims adjustor.  Costco Wholesale Corp., 47 Cal.4th at 740.

7         Plaintiff has submitted sufficient evidence to establish the facts necessary to support a

8    prima facie claim of privilege, therefore, the communication is presumed to be confidential and

9    the party seeking disclosure has the burden to establish that the communication was not

10   confidential or that there are other reasons that the privilege does not apply.  Costco Wholesale

11   Corp., 47 Cal.4th at 733.

12        "The hiring of outside counsel for a specific project usually indicates that the client is

13   seeking legal advice."  2022 Ranch, L.L.C., 113 Cal.App.4th at 1398.  Plaintiff contends that it

14   can easily be inferred that Mr. Donohue acted as a claims adjuster because BancInsure reversed

15   course on the issue of coverage after he became involved in the claim.  (ECF No. 62 at 6.)

16        Plaintiff relies heavily on Umpqua Bank v. First American Title Ins. Co., 2011 WL

17   997212 (E.D. Cal.), in arguing that Mr. Donohue was the claims processor and is therefore not

18   entitled to attorney client privilege.  In Umpqua Bank the court considered that outside counsel

19   became the only source of contact with the insured; he retained an outside consulting expert to

20   give an opinion on the coverage issues; and he sent the coverage opinion letter directly to

21   Umpqua's counsel.  Id. at *3.  The court found that these facts suggest the "intertwining and

22   ultimate blurring of lines between the roles of attorney and claims adjuster."  Id.  Although

23   counsel clearly performed both functions of counsel and claims adjuster, the court considered that

24   the attorney was specifically retained to provide a legal coverage opinion for the claims brought

25   and was authorized to conduct necessary factual investigation and contact the claimant; all

26   communication was to be confidential; the attorney was never an employee of the insurance

27   company; and counsel was instructed to issue the coverage letter directly to the claimant's

28   counsel after providing the insurance company with a legal opinion concerning the coverage

6

1    issues.  Id.  Ultimately, the Court found that the attorney-client privilege applied.  Id. at *4.

2           Here, unlike in Umpqua Bank, BancInsure did not retain Hinshaw & Culbertson as a

3    claim processor, but to protect the interests of BancInsure due to the threat of litigation and

4    settlement demands that had been made by the FDIC.  (Decl. of Ted Equals ¶ 11, ECF No. 65.)

5    The law firm was retained to conduct a legal evaluation of the claims and demands.

6           While Plaintiff relies heavily on supposed inconsistencies in deposition testimony to

7    establish that the claim was not investigated prior to being forwarded to Hinshaw & Culbertson,

8    the record does not support that conclusion.  Mr. Equals was the claims process assigned to this

9    claim upon the initial communication from the FDIC that a claim might be forthcoming.  (ECF

10   No. 65 at ¶ 4.)  From the time this file was established on February 9, 2009, KPA investigated the

11   potential claims that could arise.  (Id.).

12          After receiving the September 1, 2009 letter from the FDIC, Mr. Equals requested a copy

13   of the underwriting file on the account.  (Id. at ¶ 6.)  Upon conducting a review of the

14   underwriting file to identify communications that were subject to attorney-client privilege or had

15   been misfiled, Mr. Equals discovered that an exclusion to coverage could subject the claim to

16   being declined.  (Id. at ¶¶ 7-9.)  Hinshaw & Culbertson was directed to prepare a formal legal

17   evaluation on whether BancInsure was entitled to decline a claim by the FDIC.  (ECF No. 64 at ¶

18   12.)  Because the position on coverage was based upon the policy language barring claims by

19   receivers and the identity of the claimants, KPA's services were limited to monitoring the

20   litigation for new developments that required independent factual determination to resolve

21   coverage issues.  (ECF No. 65 at ¶ 14.)

22          Plaintiff argues that since Mr. Cross did not make a decision on coverage until he received

23   the recommendation from Mr. Donohue to deny coverage, Mr. Donahue was the ultimate

24   decision maker.  However, Mr. Donahue was retained to determine if there was an exclusion that

25   applied to the claim.  Mr. Cross stated that he received the recommendation from Mr. Donohue

26   and based upon that recommendation he made the final decision to deny the claim.  Mr.

27   Donahue's representation included making a recommendation on whether the claim from the

28   FDIC could be denied based upon the Insured v. Insured exclusion and that Mr. Cross adopted

1    that recommendation does not make Mr. Donahue the final decision maker.

2         Similarly, to the extent that, in providing his legal opinion on the issue of coverage, Mr.

3    Donahue engaged in factual investigations the attorney-client privilege is not destroyed.  While

4    the privilege is not applicable if the attorney is retained for a purpose other than offering legal

5    advice, that the attorney was required to engage in some fact finding in order to render a legal

6    opinion does not destroy the privilege.  Costco Wholesale Corp., 47 Cal.4th at 735-36.

7         Plaintiff also relies on Mr. Cross' deposition testimony that no individual at BancInsure

8    was trained in adjusting D & O policies.  However, as set forth in the deposition transcript Mr.

9    Cross was asked: "Is it fair to say that, during the entire time you have been with C.L. Frates and

10   BancInsure, nobody who had any responsibility for handling claims for BancInsure received any

11   claims handling training."  (Depo. of Mr. Cross 36:20-23.)  Mr. Cross replied:  "Yes.  Let me

12   back that up.  I can't speak to the attorneys or the Kalchik, Pratt & Associates, but no BancInsure

13   employee did."  (Id. at 36:24-37:1.)  Since KPA was hired to investigate potential claims, the fact

14   that no BancInsure employee was trained in adjusting claims does not support a finding that Mr.

15   Donohue was a claims adjuster.  Further, at the time that the claim was assigned to Mr. Donohue

16   the issue that was being considered was a legal issue regarding coverage.

17        In this instance, BancInsure has met its burden to show that the dominant purpose of the

18   representation was to obtain an outside legal opinion.  The Court finds that BancInsure has

19   established the preliminary facts necessary to support a prima facie claim of an attorney-client

20   privilege in the course of the relationship between BancInsure and Hinshaw & Culbertson.

21   Further, Plaintiff has not met its burden of establishing that the privilege did not apply or that the

22   documents were not confidential, and therefore the confidential communications need not be

23   disclosed by BancInsure.[2]

24        California law prohibits the disclosure of information claimed to be privileged by attorney

25

26   _____

     [2] The privilege log reveals that the e-mails to which Defendant is claiming attorney-client privilege do contain
27   attachments.  However, it is the Court's understanding, based upon Defendant's counsel's representation at the
     hearing and in the joint statement, that all documents attached to e-mails have been produced, with privileged
28   information produced in redacted form.  (ECF No. 62 at 27.)  The Court accepts the representation that all non-
     privileged documents have been produced.

1    client privilege in order to rule on the claim of privilege.  Cal. Evid. Code § 915(a).  The Court

2    declines Plaintiff's request to conduct an in camera review to determine the extent of Mr.

3    Donahue's involvement in the claims adjusting process.

    **C.    Work Product**

5          Plaintiff contends that the work product doctrine does not apply to the discovery at issue

6    here.  The work product doctrine is set forth in Rule 26(b)(3) of the Federal Rules of Civil

7    Procedure, which protects from discovery those materials that contain "the mental impressions,

8    conclusions, legal opinions, or legal theories of a party's attorney."  Fed. R. Civ. P. 26(b)(3); In re

9    Grand Jury Subpoena, 357 F.3d 900, 906 (9th Cir. 2004).  The work product doctrine is "a

10   qualified privilege for certain materials prepared by an attorney acting for his client in

11   anticipation of litigation."  2022 Ranch, L.L.C. v. Superior Court, 113 Cal.App.4th 1377, 1389

12   (2003) (overruled on other grounds by Costco Wholesale Corp. v. Superior Court, 47 Cal.4th 725,

13   732 (2009)).  A party may only obtain discovery of these items upon a showing that they are

14   relevant and there is a substantial need for the materials and the inability to obtain the materials or

15   their substantial equivalent by other means.  Fed. R. Civ. P. 26(b)(3)(A).  This provides for

16   discovery where mental impressions are pivotal in the litigation and the need for the material is

17   compelling.  Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992).

18         An attorney's work product is the product of his effort, research and thoughts in the

19   preparation of the client's case.  2022 Ranch, L.L.C, 113 Cal.App.4th at 1389.  An attorney's

20   work product "includes the results of his own work, and the work of those employed by him or

21   for him by his client, in investigating both the favorable and unfavorable aspects of the case, the

22   information thus assembled, and the legal theories and plan of strategy developed by the

23   attorney—all as reflected in interviews, statements, memoranda, correspondence, briefs, and any

24   other writings reflecting the attorney's 'impressions, conclusions, opinions, or legal research or

25   theories,' and in countless other tangible and intangible ways."  Id. (quoting BP Alaska

26   Exploration, Inc. v. Superior Court, 199 Cal.App.3d 1240, 1253–1254 n. 4 (1988)).

27         While Plaintiff contends that the work product doctrine does not apply because it cannot

28   reasonably be said that the documents were prepared in anticipation of litigation, it was the

1   FDIC's letter threatening litigation that caused Defendant to retain Hinshaw & Culbertson to

2   protect their interests.   (ECF No. 64-1.)   Clearly, litigation was anticipated during Hinshaw &

3   Culbertson's representation of BancInsure.

4       "[D]ocuments prepared in the ordinary course of business are not protected by the work-

5   product doctrine because they would have been created regardless of the litigation." Heath v. F/V

6   ZOLOTOI, 221 F.R.D. 545, 550 (W.D. Wash. 2004).  This analysis is complicated in the realm of

7   insurance litigation because insurers are "in the business of conducting, investigating and

8   evaluating claims against its policies." Moe v. System Transport, Inc., 270 F.R.D. 613, 624 (D.

9   Mont. 2010).  "[I]nsurance companies have an independent obligation to review and follow up on

10  claims, and their reports are thus not protected, although they are usually prepared with an eye

11  toward litigation." Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist., 2006 WL 2050999, at

12  *4 n.3 (citing Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655 (S.D.Ind.1991)).

13      Where it must be determined at what point in time an insurer's activity shifted from the

14  ordinary course of business to anticipation of litigation, the court is to consider "whether, in light

15  of the nature of the document and the factual situation in the particular case, the document can

16  fairly be said to have been prepared or obtained because of the prospect of litigation." Moe, 270

17  F.R.D. at 625 (quoting Dion v. Nationwide Mut. Ins. Co., 185 F.R.D. 288, 292 n.1 (D. Mont.

18  1998)).  When the insurer argues that it acted in anticipation of litigation prior to denying a claim,

19  it bears the burden of presenting specific evidentiary proof of objective facts demonstrating a

20  resolve to litigate. Bronsink v. Allied Property and Cas. Ins., No. 09-751 MJP, 2010 WL 786016,

21  at *3 (W.D. Wash. Mar. 4, 2010).

22      Relying on Umpqua Bank, Plaintiff contends that the documents created relate to issues of

23  coverage and are not considered work product.  Defendant contends that no independent work

24  product was created after the demand letter was received.  It is Defendant's position that the claim

25  was declined based upon the identity of the claimant, the FDIC, and since the case turns on the

26  meaning of receiver and successor, a question of law, the work product is not discoverable as it is

27  also covered by attorney-client privilege.

28      After Mr. Equals discovered that an exclusion to coverage could subject the claim to being

1  declined, (ECF No. 65 at ¶¶ 7-9), Hinshaw & Culbertson was directed to prepare a formal legal
2  evaluation on whether BancInsure was entitled to decline a claim by the FDIC, (ECF No. 64 at ¶
3  12).  This would indicate that the representation was focused not on litigation, but was in the
4  ordinary course of business to determine whether there was a legal basis to deny the claim.
5  Defendant has failed to meet its burden of presenting specific evidentiary proof of objective facts
6  demonstrating a resolve to litigate.  Bronsink, 2010 WL 786016, at *3.

7      The Court finds that the work product doctrine does not apply and any documents
8  withheld on the basis of work product doctrine, to which the attorney-client privilege does not
9  apply, shall be produced.

10      **D.      Common Interest Protection**

11      Plaintiff also contends that BancInsure redacted portions of reinsurance reports based on
12  the common interest doctrine.[3]  Plaintiff argues that Defendant has offered no evidence to show
13  any common interest between itself and any of its insurers; or an agreement to pursue a common
14  legal defense and/or to share costs of this litigation with its reinsurers.  Plaintiff contends that the
15  mere suggestion that a common interest protection may apply does not suffice.

16      BancInsure has withheld periodic reports that it was required to make to its reinsurers on
17  the status of the dispute.  The first periodic report was prepared in August 2010.  At this time the
18  FDIC had made multiply monetary demands as had other parties such as the Chapter 11
19  Bankruptcy estate administrator.  Defendant states that since it was in the midst of a ripe legal
20  dispute, the further status and legal strategy for dealing with the claims was prepared and edited
21  by counsel.

22      In support of the motion, Plaintiff cites BancInsure, Inc. v. McCaffree, 2013 WL 5769918
23  (D. Kan. Oct. 24, 2013).  In McCaffree, the court ordered BancInsure to produce reinsurance
24  documents because BancInsure had provided nothing but a bare suggestion that any common
25  legal interest existed between it and its reinsurer.  Because BancInsure did not show a common
26  legal interest the court found they had waived its claims of privilege and work product doctrine.

27
28

---

[3] A reinsurance agreement is a contract by which one insurer transfers a risk and a right to receive the related premium to another insurer willing to accept both.  Lipton v. Superior Court, 48 Cal.App.4th 1599, 1616-17 (1996).

1   McCaffree, 2013 WL 5769918, at *7.

2          Defendant contends the bar on production of reinsurance reports is based on California

3   Evidence Code sections 912 and 952.  Because Kansas does not have such an exception, the

4   common interest analysis applied in the Kansas case does not apply in California.

5          Under California law, "where reinsurance documents include attorney-client or protected

6   work product communications they would be entitled to the same privilege protection as would

7   similar communications between the ceding insurer and its attorneys handling the insured's

8   claim." Lipton, 48 Cal.App.4th at 1618.  California law requires that "[w]here an insurer obtains

9   reinsurance, he must communicate all the representations of the original insured, and also all the

10  knowledge and information he possesses, whether previously or subsequently acquired, which are

11  material to the risk."  Cal. Ins. Code § 622.

12         To the extent that communication with the reinsurance company includes attorney-client

13  information, the documents are not discoverable and Defendant has not waived its privilege by

14  the communication with the reinsurers.

15                                         **V.**

16                          **CONCLUSION AND ORDER**

17         Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion to compel is

18  GRANTED IN PART and DENIED IN PART as follows:

19      1.     Plaintiff's motion to compel documents withheld on the basis of work product

20             privilege is GRANTED;

21      2.     Plaintiff's motion to compel documents withheld on the basis of attorney-client

22             privilege is DENIED; and

23      3.     Defendant shall produce any responsive documents within thirty (30) days from

24             the date of service of this order.

25

26  IT IS SO ORDERED.

27  Dated:  **December 27, 2013**     _____
                                       UNITED STATES MAGISTRATE JUDGE
28

                                          12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28