# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS T. HAWKER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BANCINSURANCE, INC., et al.,<br><br>Defendants. | Case No. 1:12-cv-01261-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL<br><br>(ECF Nos. 61-68)<br><br>THIRTY-DAY DEADLINE |

## I.

## PROCEDURAL BACKGROUND

Plaintiffs Hawker, Kraechan, Incandela, Lee, and Rocha brought this diversity action against Defendants BancInsurance, Inc. and BancInsure, Inc. ("Defendant" or "BancInsure") on August 1, 2012, alleging wrongful denial of insurance coverage. (ECF No. 1.)  A separate action was brought by the Federal Deposit Insurance Corporation ("FDIC") against Plaintiffs to this action which was settled and the FDIC, as receiver, ("FDIC-R") is now a plaintiff to this action by assignment.  FDIC v. Hawker, No. 12-cv-00127-SAB (E.D. Cal.).  On November 27, 2013, Plaintiffs brought a motion to compel production of documents. (ECF No. 61.)

Plaintiff brings this motion to compel seeking documents that are being withheld or redacted due to Defendant's assertion of privilege.  The issues here are whether BancInsure's attorney is entitled to attorney-client privilege; whether the documents are entitled to work

1

product protection; and whether common interest protection applies to the requested documents.

The Court heard oral argument on December 11, 2013. (ECF No. 70.) Counsel Patrick Richard appeared telephonically for Plaintiff, and counsel Edward Donohue and Christopher Borders appeared telephonically for Defendant. Id. Having considered the joint statement, the declarations and exhibits attached thereto, arguments presented at the December 11, 2013 hearing, as well as the Court's file, the Court issues the following order.

## II.

## FACTUAL BACKGROUND

Prior to April 2007, County Bank obtained director and officer ("D & O") insurance coverage from BancInsure under two separate policy forms. (Endorsement Changes to Directors & Officers Liability Policy, ECF No. 63-3.) The FDIC-R was eventually appointed as receiver for County Bank.

On February 9, 2009, Defendant BancInsure received a letter from James Rockett, attorney for Capital Corp of the West, providing notice that they had been informed that in the event of a seizure of County Bank by state and federal regulators, it was likely that the FDIC-R would commence an action against the directors of the Bank. (Decl. of James Cross ¶ 4, ECF No. 64; James Rocket Letter attached as Exhibit A, ECF No. 64-1.) In response, Defendant BancInsure established a claim file, No. 4138p. (ECF No. 64 at ¶ 4.) The file was assigned to Ted Equal of the adjustment firm of Kalchik Pratt & Associates ("KPA"). (Id. at ¶ 5.) Between February 2009 and August 28, 2009, KPA investigated the potential grounds for numerous alternative claims that could be brought in the future. (Id.) KPA made periodic contact with Mr. Rocket; and Mr. Equals communicated with the FDIC-R regarding records requests. Reports on the results of the investigation were made to BancInsure's Assistant Claims Manager and on occasion to Mr. Cross.

On September 1, 2009, BancInsure received a potential claim notice including a direct claim for damages or settlement by the FDIC-R and threatening litigation against BancInsure and its insureds. (Id. at ¶ 6; FDIC Letter attached as Exhibit 2, ECF No. 64-2.) Upon receipt of the demand letter, KPA and Defendant BancInsure recognized that they had a factual basis to decline

1 the claim under the policy. (ECF No. 64 at ¶ 7.) On September 1, 2009, Defendant consulted an outside law firm, Hinshaw & Culbertson, and the firm was retained on September 2, 2009, in anticipation of the litigation threatened. (Id. at ¶ 11.)

Hinshaw & Culbertson prepared a series of position letters which were reviewed and approved by BancInsure. On September 14, 2009, Defendant advised the FDIC that it had no legal right to make a direct claim against BancInsure and no right to report potential claims under the policy. (Id. at ¶ 12.) In December 2009, Mr. Cross made the final decision that the claim would be denied; and on December 8, 2009, Mr. Donohue of Hinshaw & Culbertson issued a letter denying coverage. (Id. at ¶ 13; ECF No. 64-9.)

In December 2009, Defendant received a series of demand letters from the FDIC-R and certain insureds demanding that Defendant indemnify the loss based on the original demand by the FDIC. After receiving each of these communications, Defendant requested a legal evaluation of the claim and consulted with counsel regarding the appropriate response, each demand was denied. (ECF No. 64 at ¶ 14.)

## III.
## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

## IV.
## DISCUSSION

Plaintiff contends that Defendant has withheld documents improperly asserting the attorney-client privilege and work product and common interest doctrine. In a diversity case, issues regarding privilege are determined under the state law governing the decision in the case. Fed. R. Civ. P. 501; Star Editorial, Inc. v. U.S. District Court, 7 F.3d 856, 859 (9th Cir. 1993). Since the decision in this action will be decided under California law, California law controls the issue of the privilege seeking to be applied here.

**A.     Defendant's Objections to Deposition Testimony**

Defendant filed an objection to the deposition testimony of Van Butler and Donald Pratt and interrogatory responses, attached as Exhibits G, H, and I to the Declaration of James H. Vorhis. (ECF No. 68.) Defendant objects on the grounds of relevance, hearsay, and Rule 403 of the Federal Rules of Civil Procedure.

All these documents relate to deposition questions and interrogatory responses in a separate action, Columbian Financial Corporation v. BancInsurance, No. 08-cv-2642 CM/JPO (D. Kan.), in which Plaintiff contends that Defendant made admissions that the Insured v. Insured exclusion does not apply to claims by the FDIC. (ECF No. 62 at 4.) Defendant argues that Columbian Financial Corporation did not involve the application of the Insured v. Insured exclusion and involved a different policy form from which BancInsure made its coverage determination here. (ECF No. 68 at 4.) Defendant contends that this evidence is irrelevant to the issue before this Court, whether there has been a waiver of any privilege.

"Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In this instance, the Court is to determine whether the attorney-client privilege or work-product doctrine applies to protect certain documents from disclosure and whether reinsurance reports are discoverable. While Plaintiff includes statements regarding Defendant BancInsure taking a different position on the applicability of the Insured v. Insured exclusion in another case in the statement of nature of action, it does not include argument regarding this testimony in the motion. To the extent that Plaintiff is now alleging that Defendant BancInsure has changed its position on the Insured v. Insured exclusion and its applicability in this action, the Court finds this testimony irrelevant to the issue to be decided here. Defendant's objection on the ground of relevance is sustained. Since the evidence has been found to be irrelevant, the Court declines to address objections on other grounds.

**B.     Attorney-Client Privilege**

Plaintiff contends that Mr. Donohue was acting as a claims processor, and therefore, the attorney-client privilege does not apply. Pursuant to California law, the client "has a privilege to

refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer. . . . Cal. Evid. Code § 954. A confidential communication is "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." Cal. Evid. Code § 952.

The attorney client privilege is absolute and disclosure cannot be ordered regardless of necessity, relevance, or any other circumstance particular in the case. Costco Wholesale Corp. v. Superior Court, 47 Cal.4th 725, 732 (2009). The party claiming the privilege has the burden of establishing the facts necessary to support a prima facie claim of privilege. Costco Wholesale Corp., 47 Cal.4th at 733. Once the party asserting the privilege has met its burden, the communication is presumed to be confidential and the party seeking disclosure has the burden to establish that the communication was not confidential or that there are other reasons that the privilege does not apply. Id.

Plaintiff argues that Defendant has failed to carry its burden to assert attorney-client privilege. Plaintiff also argues that Mr. Donohue was engaged in fact finding, was acting as a claims adjuster, and ultimately made the decision on coverage, and therefore, the attorney-client privilege does not apply. (Joint Statement Re Discovery Disagreement 7-13,[1] ECF No. 62.)

In this instance, Defendant has submitted evidence that after receiving notice of the claim, a file was opened on February 9, 2009, it was assigned to KPA for an investigation into potential claims that could arise. After receiving notice of the claim on September 1, 2009, Defendant determined that they had a factual basis to deny the claim. Defendant hired Hinshaw &

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

Culbertson to provide a legal opinion regarding coverage. Following Hinshaw & Culbertson conducting a legal analysis, a legal opinion was provided recommending denying coverage. Upon reviewing the legal opinion and consulting with Hinshaw & Culbertson, Mr. Cross made the decision to deny coverage. The Court must first determine if the dominant purpose of the relationship between BancInsure, and Mr. Donohue was to render legal advice or to act as a claims adjustor. Costco Wholesale Corp., 47 Cal.4th at 740.

Plaintiff has submitted sufficient evidence to establish the facts necessary to support a prima facie claim of privilege, therefore, the communication is presumed to be confidential and the party seeking disclosure has the burden to establish that the communication was not confidential or that there are other reasons that the privilege does not apply. Costco Wholesale Corp., 47 Cal.4th at 733.

"The hiring of outside counsel for a specific project usually indicates that the client is seeking legal advice." 2022 Ranch, L.L.C., 113 Cal.App.4th at 1398. Plaintiff contends that it can easily be inferred that Mr. Donohue acted as a claims adjuster because BancInsure reversed course on the issue of coverage after he became involved in the claim. (ECF No. 62 at 6.)

Plaintiff relies heavily on Umpqua Bank v. First American Title Ins. Co., 2011 WL 997212 (E.D. Cal.), in arguing that Mr. Donohue was the claims processor and is therefore not entitled to attorney client privilege. In Umpqua Bank the court considered that outside counsel became the only source of contact with the insured; he retained an outside consulting expert to give an opinion on the coverage issues; and he sent the coverage opinion letter directly to Umpqua's counsel. Id. at *3. The court found that these facts suggest the "intertwining and ultimate blurring of lines between the roles of attorney and claims adjuster." Id. Although counsel clearly performed both functions of counsel and claims adjuster, the court considered that the attorney was specifically retained to provide a legal coverage opinion for the claims brought and was authorized to conduct necessary factual investigation and contact the claimant; all communication was to be confidential; the attorney was never an employee of the insurance company; and counsel was instructed to issue the coverage letter directly to the claimant's counsel after providing the insurance company with a legal opinion concerning the coverage

issues. Id. Ultimately, the Court found that the attorney-client privilege applied. Id. at *4.

Here, unlike in Umpqua Bank, BancInsure did not retain Hinshaw & Culbertson as a claim processor, but to protect the interests of BancInsure due to the threat of litigation and settlement demands that had been made by the FDIC. (Decl. of Ted Equals ¶ 11, ECF No. 65.) The law firm was retained to conduct a legal evaluation of the claims and demands.

While Plaintiff relies heavily on supposed inconsistencies in deposition testimony to establish that the claim was not investigated prior to being forwarded to Hinshaw & Culbertson, the record does not support that conclusion. Mr. Equals was the claims process assigned to this claim upon the initial communication from the FDIC that a claim might be forthcoming. (ECF No. 65 at ¶ 4.) From the time this file was established on February 9, 2009, KPA investigated the potential claims that could arise. (Id.).

After receiving the September 1, 2009 letter from the FDIC, Mr. Equals requested a copy of the underwriting file on the account. (Id. at ¶ 6.) Upon conducting a review of the underwriting file to identify communications that were subject to attorney-client privilege or had been misfiled, Mr. Equals discovered that an exclusion to coverage could subject the claim to being declined. (Id. at ¶¶ 7-9.) Hinshaw & Culbertson was directed to prepare a formal legal evaluation on whether BancInsure was entitled to decline a claim by the FDIC. (ECF No. 64 at ¶ 12.) Because the position on coverage was based upon the policy language barring claims by receivers and the identity of the claimants, KPA's services were limited to monitoring the litigation for new developments that required independent factual determination to resolve coverage issues. (ECF No. 65 at ¶ 14.)

Plaintiff argues that since Mr. Cross did not make a decision on coverage until he received the recommendation from Mr. Donohue to deny coverage, Mr. Donahue was the ultimate decision maker. However, Mr. Donahue was retained to determine if there was an exclusion that applied to the claim. Mr. Cross stated that he received the recommendation from Mr. Donahue and based upon that recommendation he made the final decision to deny the claim. Mr. Donahue's representation included making a recommendation on whether the claim from the FDIC could be denied based upon the Insured v. Insured exclusion and that Mr. Cross adopted

7


that recommendation does not make Mr. Donahue the final decision maker.

Similarly, to the extent that, in providing his legal opinion on the issue of coverage, Mr. Donahue engaged in factual investigations the attorney-client privilege is not destroyed. While the privilege is not applicable if the attorney is retained for a purpose other than offering legal advice, that the attorney was required to engage in some fact finding in order to render a legal opinion does not destroy the privilege. Costco Wholesale Corp., 47 Cal.4th at 735-36.

Plaintiff also relies on Mr. Cross' deposition testimony that no individual at BancInsure was trained in adjusting D & O policies. However, as set forth in the deposition transcript Mr. Cross was asked: "Is it fair to say that, during the entire time you have been with C.L. Frates and BancInsure, nobody who had any responsibility for handling claims for BancInsure received any claims handling training." (Depo. of Mr. Cross 36:20-23.) Mr. Cross replied: "Yes. Let me back that up. I can't speak to the attorneys or the Kalchik, Pratt & Associates, but no BancInsure employee did." (Id. at 36:24-37:1.) Since KPA was hired to investigate potential claims, the fact that no BancInsure employee was trained in adjusting claims does not support a finding that Mr. Donohue was a claims adjuster. Further, at the time that the claim was assigned to Mr. Donohue the issue that was being considered was a legal issue regarding coverage.

In this instance, BancInsure has met its burden to show that the dominant purpose of the representation was to obtain an outside legal opinion. The Court finds that BancInsure has established the preliminary facts necessary to support a prima facie claim of an attorney-client privilege in the course of the relationship between BancInsure and Hinshaw & Culbertson. Further, Plaintiff has not met its burden of establishing that the privilege did not apply or that the documents were not confidential, and therefore the confidential communications need not be disclosed by BancInsure.[2]

California law prohibits the disclosure of information claimed to be privileged by attorney

---

[2] The privilege log reveals that the e-mails to which Defendant is claiming attorney-client privilege do contain attachments. However, it is the Court's understanding, based upon Defendant's counsel's representation at the hearing and in the joint statement, that all documents attached to e-mails have been produced, with privileged information produced in redacted form. (ECF No. 62 at 27.) The Court accepts the representation that all non-privileged documents have been produced.

client privilege in order to rule on the claim of privilege. Cal. Evid. Code § 915(a). The Court declines Plaintiff's request to conduct an in camera review to determine the extent of Mr. Donahue's involvement in the claims adjusting process.

### C. Work Product

Plaintiff contends that the work product doctrine does not apply to the discovery at issue here. The work product doctrine is set forth at Rule 26(b)(3) of the Federal Rules of Civil Procedure, which protects from discovery those materials that contain "the mental impressions, conclusions, legal opinions, or legal theories of a party's attorney." Fed. R. Civ. P. 26(b)(3); In re Grand Jury Subpoena, 357 F.3d 900, 906 (9th Cir. 2004). The work product doctrine is "a qualified privilege for certain materials prepared by an attorney acting for his client in anticipation of litigation." 2022 Ranch, L.L.C. v. Superior Court, 113 Cal.App.4th 1377, 1389 (2003) (overruled on other grounds by Costco Wholesale Corp. v. Superior Court, 47 Cal.4th 725, 732 (2009)). A party may only obtain discovery of these items upon a showing that they are relevant and there is a substantial need for the materials and the inability to obtain the materials or their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A). This provides for discovery where mental impressions are pivotal in the litigation and the need for the material is compelling. Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992).

An attorney's work product is the product of his effort, research and thoughts in the preparation of the client's case. 2022 Ranch, L.L.C, 113 Cal.App.4th at 1389. An attorney's work product "includes the results of his own work, and the work of those employed by him or for him by his client, in investigating both the favorable and unfavorable aspects of the case, the information thus assembled, and the legal theories and plan of strategy developed by the attorney—all as reflected in interviews, statements, memoranda, correspondence, briefs, and any other writings reflecting the attorney's 'impressions, conclusions, opinions, or legal research or theories,' and in countless other tangible and intangible ways." Id. (quoting BP Alaska Exploration, Inc. v. Superior Court, 199 Cal.App.3d 1240, 1253–1254 n. 4 (1988)).

While Plaintiff contends that the work product doctrine does not apply because it cannot reasonably be said that the documents were prepared in anticipation of litigation, it was the

1   FDIC's letter threatening litigation that caused Defendant to retain Hinshaw & Culbertson to
2   protect their interests. (ECF No. 64-1.) Clearly, litigation was anticipated during Hinshaw &
3   Culbertson's representation of BancInsure.

4   "[D]ocuments prepared in the ordinary course of business are not protected by the work-
5   product doctrine because they would have been created regardless of the litigation." Heath v. F/V
6   ZOLOTOI, 221 F.R.D. 545, 550 (W.D. Wash. 2004). This analysis is complicated in the realm of
7   insurance litigation because insurers are "in the business of conducting, investigating and
8   evaluating claims against its policies." Moe v. System Transport, Inc., 270 F.R.D. 613, 624 (D.
9   Mont. 2010). "[I]nsurance companies have an independent obligation to review and follow up on
10  claims, and their reports are thus not protected, although they are usually prepared with an eye
11  toward litigation." Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist., 2006 WL 2050999, at
12  *4 n.3 (citing Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655 (S.D.Ind.1991)).

13  Where it must be determined at what point in time an insurer's activity shifted from the
14  ordinary course of business to anticipation of litigation, the court is to consider "whether, in light
15  of the nature of the document and the factual situation in the particular case, the document can
16  fairly be said to have been prepared or obtained because of the prospect of litigation." Moe, 270
17  F.R.D. at 625 (quoting Dion v. Nationwide Mut. Ins. Co., 185 F.R.D. 288, 292 n.1 (D. Mont.
18  1998)). When the insurer argues that it acted in anticipation of litigation prior to denying a claim,
19  it bears the burden of presenting specific evidentiary proof of objective facts demonstrating a
20  resolve to litigate. Bronsink v. Allied Property and Cas. Ins., No. 09-751 MJP, 2010 WL 786016,
21  at *3 (W.D. Wash. Mar. 4, 2010).

22  Relying on Umpqua Bank, Plaintiff contends that the documents created relate to issues of
23  coverage and are not considered work product. Defendant contends that no independent work
24  product was created after the demand letter was received. It is Defendant's position that the claim
25  was declined based upon the identity of the claimant, the FDIC, and since the case turns on the
26  meaning of receiver and successor, a question of law, the work product is not discoverable as it is
27  also covered by attorney-client privilege.

28  After Mr. Equals discovered that an exclusion to coverage could subject the claim to being

declined, (ECF No. 65 at ¶¶ 7-9), Hinshaw & Culbertson was directed to prepare a formal legal evaluation on whether BancInsure was entitled to decline a claim by the FDIC, (ECF No. 64 at ¶ 12). This would indicate that the representation was focused not on litigation, but was in the ordinary course of business to determine whether there was a legal basis to deny the claim. Defendant has failed to meet its burden of presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate. Bronsink, 2010 WL 786016, at *3.

The Court finds that the work product doctrine does not apply and any documents withheld on the basis of work product doctrine, to which the attorney-client privilege does not apply, shall be produced.

### D.   Common Interest Protection

Plaintiff also contends that BancInsure redacted portions of reinsurance reports based on the common interest doctrine.[3] Plaintiff argues that Defendant has offered no evidence to show any common interest between itself and any of its insurers; or an agreement to pursue a common legal defense and/or to share costs of this litigation with its reinsurers. Plaintiff contends that the mere suggestion that a common interest protection may apply does not suffice.

BancInsure has withheld periodic reports that it was required to make to its reinsurers on the status of the dispute. The first periodic report was prepared in August 2010. At this time the FDIC had made multiply monetary demands as had other parties such as the Chapter 11 Bankruptcy estate administrator. Defendant states that since it was in the midst of a ripe legal dispute, the further status and legal strategy for dealing with the claims was prepared and edited by counsel.

In support of the motion, Plaintiff cites BancInsure, Inc. v. McCaffree, 2013 WL 5769918 (D. Kan. Oct. 24, 2013). In McCaffree, the court ordered BancInsure to produce reinsurance documents because BancInsure had provided nothing but a bare suggestion that any common legal interest existed between it and its reinsurer. Because BancInsure did not show a common legal interest the court found they had waived its claims of privilege and work product doctrine.

---

[3] A reinsurance agreement is a contract by which one insurer transfers a risk and a right to receive the related premium to another insurer willing to accept both. Lipton v. Superior Court, 48 Cal.App.4th 1599, 1616-17 (1996).

McCaffree, 2013 WL 5769918, at *7.

Defendant contends the bar on production of reinsurance reports is based on California Evidence Code sections 912 and 952. Because Kansas does not have such an exception, the common interest analysis applied in the Kansas case does not apply in California.

Under California law, "where reinsurance documents include attorney-client or protected work product communications they would be entitled to the same privilege protection as would similar communications between the ceding insurer and its attorneys handling the insured's claim." Lipton, 48 Cal.App.4th at 1618. California law requires that "[w]here an insurer obtains reinsurance, he must communicate all the representations of the original insured, and also all the knowledge and information he possesses, whether previously or subsequently acquired, which are material to the risk." Cal. Ins. Code § 622.

To the extent that communication with the reinsurance company includes attorney-client information, the documents are not discoverable and Defendant has not waived its privilege by the communication with the reinsurers.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion to compel is GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff's motion to compel documents withheld on the basis of work product privilege is GRANTED;
2. Plaintiff's motion to compel documents withheld on the basis of attorney-client privilege is DENIED; and
3. Defendant shall produce any responsive documents within thirty (30) days from the date of service of this order.

IT IS SO ORDERED.

Dated: **December 27, 2013**

UNITED STATES MAGISTRATE JUDGE